## COLBURN *v.* POMEROY.

In assumpsit upon a parol contract, any material variance between the statement of the consideration, as contained in the declaration and the proof, will be fatal.

A plaintiff who has performed his part of a special contract, and seeks to recover of the defendant the sum due under the contract, can not recover upon the general counts, where the amount due is not liquidated, and where the contract is such that the law would not, from the transactions between the parties, in the absence of such express agreement, confer the same rights and impose the same duties and obligations as those conferred and imposed by such contract.

Land set off upon execution was described as bounded properly on three sides, and on the fourth as bounded by "Court Square, or land of William Colburn;"— *Held,* that the description was sufficient.

Our statute makes the swearing of an appraiser upon an execution the commencement of a levy upon real estate.

A levy of an execution upon land will be considered as taking effect, by relation, from the time when such levy was commenced, if followed seasonably by a compliance with the requirements of the law.

Therefore, where B was liable over to A to indemnify him against all damages and costs in a suit in which A was defendant, and a judgment be recovered against A, and a levy upon his real estate was commenced by swearing an appraiser, he may sue B immediately, and if the levy is afterward completed according to law, and the execution thereby satisfied, he may recover of B, in such suit, the whole amount for which his land was thus set off, including costs of set-off.

Where a warrantor or guarantor, either voluntarily or upon notice, comes in to defend a suit against one to whom he is liable over, he comes in subject to all such reasonable rules and orders as the court may see fit to make in the case.

Therefore, in a suit against A, to whom B is liable over, if B comes in to defend, and the court order him, upon the motion of A, to furnish A security for costs in the suit, and thereupon B abandon the defense without complying with such order, he will be concluded by a judgment against A the same as though he had made full defense.

ASSUMPSIT, with general counts for money had and received, money paid and money lent and advanced, and for work, labor and services; and a special count, alleging that in consideration that the plaintiff at the defendant's request would give up the possession of a certain house, called the Hannah Dow house, with the appurtenances thereto belonging, to the defendant, and do all such things in relation thereto as might be directed by N. B. Felton, the attorney of said defendant, he, the said Pomeroy, promised the plaintiff to save him harmless from all demands, suits, costs and trouble that might happen to him by means of his so doing and obeying the directions of said Felton; that, relying upon these promises, the plaintiff did surrender up possession of said house, &c., to said defendant, and obey said directions; yet the defendant did not save harmless the plaintiff concerning the premises, but suffered a suit to be commenced against him, and judgment to be rendered thereon for $138, and costs, taxed at $27.41, on which execution was issued and levied upon the plaintiff's property, whereby he has been compelled to pay not only those sums, but has been put to great trouble and expense by reason of the suit.

On trial upon the general issue it appeared that about the 19th of April, 1854, the plaintiff was in possession of the Hannah Dow house, with about one acre of land adjoining, under a lease from one Hazeltine, from December 6, 1853, to May 6, 1854, and on or about said 19th of April, the defendant being desirous of obtaining possession of the property, made an agreement with the plaintiff concerning it.

On this point the plaintiff testified that the defendant came to him and claimed to own the house, and wanted possession, and proposed to give the plaintiff a lease of it; and upon this being declined, the defendant, after consulting his counsel, Mr. Felton, proposed to give a lease of the property to the plaintiff's son-in-law, Clark, who, with his wife, then boarded with the plaintiff in the same house; and if he would accept it, he, the defendant, promised that he would see him free and clear of all trouble and expense on account of it, would save him harmless, and if any thing came up to make trouble or cost in consequence of Clark taking a lease under him, he would pay all cost and trouble, and save him harmless, and that the defendant made the same promises to the plaintiff, and thereupon the plaintiff and defendant and the said Clark went to Felton's office, where a lease of the house and land was made and accepted by Clark. He also testified that the next day the defendant came to the house, and upon inquiry being made by the plaintiff and Clark as to what they should do if Hazeltine sued them, he told them not to leave the premises; that he had employed Felton and Sloan to defend the suit, and if they were sued to go according to Felton's directions; that soon after this, he, the plaintiff, had a notice to quit, and just before the time was out he asked Mr. Felton what he should do, and Mr. Felton advised him to break up house-keeping, and he did so, but removed nothing, Mr. Felton saying that it was not necessary; that Clark was tenant, and by and by the plaintiff might return.

It appeared that afterward, immediately on the expiration of the notice to quit, the plaintiff was sued under the landlord and tenant act, by Hazeltine, and after several trials judgment was rendered against him, and he was subjected to some expense and trouble about it; and after the termination of that suit he was also sued by him for the rent of the property in question, to which Mr. Felton answered as Pomeroy's attorney, and in respect to the first writ the plaintiff obeyed said Felton's directions.

While the second suit was pending, the plaintiff, in writing, applied to the court, representing that said suit was pending, and praying that Pomeroy might not be allowed to defend it without indemnifying the plaintiff against it; and the court thereupon ordered that the defendant be allowed to defend upon giving indemnity to the plaintiff Colburn, and also to Hazeltine; but such security was never furnished, and judgment was rendered against Colburn for $138 debt, and $27.41 costs. And it appeared that this application was written by Mr. Bryant, the counsel of Hazeltine in that suit, without consultation with Mr. Felton, although Colburn testified that he had before talked with Felton, who had written to Pomeroy, but got no directions, and that he told the plaintiff he guessed he would have to pay the cost; and the plaintiff testified that he then thought best to take care of himself.

This order for indemnity was October term, 1857, and the judgment April term, 1858.

The testimony of Clark was substantially like that of the plaintiff, as to the agreement; Clark representing it that the defendant agreed to indemnify them and pay all expense, and cause them no trouble in case a suit was brought by Hazeltine, and stating, also, that when the plaintiff left, he, the witness, hired his furniture. He also testified that the defendant said he would be responsible for all damages, if he, the said Clark, would take a lease, and that he said the same to the plaintiff, if he would give up the premises. It appeared also that the defendant received rent for the house and land of Clark, according to the lease to him.

The writ in this suit is dated April 14, 1859, and the levy on the plaintiff's land was commenced on that day by swearing one of the appraisers, and the extent was completed in October, 1859. The extent was of two undivided seventh parts of about one eighth of an acre of land, described as bounded on the west "by Court Square, or land of William Colburn," and the said Josiah Colburn testifying that he never knew the land of William Colburn, called Court Square.

The land of William Colburn, mentioned above, is about two rods in width, lies between the land levied upon and the county land on which the court house is situated, called Court Square, and constitutes the whole western boundary of the land levied upon, and a part of the eastern boundary of said county land.

Upon this evidence a verdict was taken by consent for the plaintiff, for $246.64, including the amount of said judgment and interest, subject to the opinion of the court, to be set aside or modified as the court shall order; it being understood that if the court shall

be of the opinion that the action can be maintained, but that the amount of said judgment ought not to be included in the damages, then the verdict shall be reduced to $30, being the amount agreed upon by counsel for services, and expenses and trouble about the first suit, it being so agreed for the purpose of this suit.

The questions arising upon the case were reserved.

*Woods & Binghams*, and *Bryant*, for the plaintiff.

*Felton*, for the defendant.

SARGENT, J. Can this action be maintained upon the count founded on the special contract?

There is no doubt as to the rule that must govern in such cases. It is well settled that in declaring in assumpsit upon a contract not under seal, the consideration must be truly stated, and must be proved as laid in the declaration. 1 Ch. Pl. 297; *Moore v. Ross*, 7 N. H. 528; *Philbrick v. Favor*, 7 N. H. 326; *Barden v. Manning*, 2 N. H. 290; *Insurance Co. v. Hunt*, 10 N. H. 219; *Smith v. Wheeler*, 29 N. H. 342; *Mitchell v. Gile*, 12 N. H. 396; *Streeter v. Sumner*, 19 N. H. 518.

In this case the consideration stated in the declaration is, that the plaintiff would give up the possession of a certain house, called the Hannah Dow house, with the appurtenances thereto belonging, to the defendant, and do all things in relation thereto, as might be directed by N. B. Felton, the attorney of said defendant. The evidence shows that the plaintiff was in possession of said house and about one acre of land, and that whatever arrangement was made with the plaintiff on the 19th of April was made concerning the whole property, the land as well as the house. It is also evident, from the testimony, that it was as important for the defendant to obtain possession of the land as of the house, for the purposes for which he desired it. And it appeared that by the arrangement made the possession of the land was surrendered to the defendant, as well as of the house, and that the contract was as much in relation to the one as the other. It is apparent that, in this respect, the consideration as stated in the declaration is not sustained by the evidence, and is not correctly stated, as only a part of the real consideration for the defendant's promise is set forth in that count. It is not claimed here that this land was so connected with the house, or so situated as to pass with the house as a part of it, by deed, or as appendant or appurtenant to the house.

Again it is alleged, as a part of the consideration for the defendant's promise, that the plaintiff would do all such things in relation thereto (that is, in relation to the Dow house and the possession of the same), as might be directed by Mr. Felton; whereas the proof is, that whatever contract and promises were ever made, were made and concluded on one day, and the next day, when the plaintiff and Clark inquired of the defendant what they should do in case they got sued by Hazeltine, they were directed not to leave the premises, and if they were sued to go according to Felton's directions. But it does not appear that the plaintiff's promising to do so was any part of the consideration for the defendant's promises, as alleged

in the special contract.  In that respect the consideration is not truly stated ; it is not proved as laid.

It would also be questionable, upon the evidence as stated, whether the taking of the lease by Clark, of the house and land, was not a part of the consideration for the defendant's promises to the plaintiff, as well as to Clark, as it would seem to have been only a part of the defendant's object to get the plaintiff to give up the possession of these premises, unless he or Clark would take a lease of them from him.   This count is therefore clearly defective.

Can the action be sustained upon the general counts ?

It is settled that when labor is performed, materials furnished, &c., under a specific contract, and the contract is fully performed, so that the money is due, and nothing remains to be done but to make payment, the party is not obliged to declare upon the official contract, but may sustain an action upon the general counts.  *Cummings* v. *Nichols*, 13 N. H. 427, and authorities cited ; *Felton* v. *Dickinson*, 10 Mass. 287, and cases cited in note ; *Baker* v. *Corey*, 19 Pick. 496 ; *Toucey* v. *Preston*, 1 Conn. 175 ; *Mitchell* v. *Gile*, 12 N. H. 390 ; *Streeter* v. *Sumner*, 19 N. H. 518.

It is claimed that the rule laid down in these cases applies to the present case, and that on this ground the plaintiff's action may be sustained on the general counts ; that he has performed his contract fully on his part, and that nothing remains but to pay over the money.   But this is not true in the case before us, for here the amount of money to be paid is not ascertained, and before any sum can be claimed it must be ascertained in some way ; the amount of damages due the plaintiff under the contract is first to be ascertained, and that can not well be done except in connection with the terms and conditions of the contract itself.   In the cases cited the sum that was to be paid was fixed and determined in the contract.

In *Streeter* v. *Sumner*, the last case cited, the rule is definitely stated by *Woods*, J., as follows : " The rule is, that where the plaintiff's claim does not sound in damages, but is for a definite, fixed sum, the general count is sufficient.   As where one party agrees to do certain work, and the other agrees to pay a certain sum of money, and when the work is done the latter refuses to pay the money.   In such case a debt has accrued, and nothing remains but to pay the sum of money fixed and ascertained by the terms of the contract, to be paid upon the completion of the work."

In *Sanborn* v. *Emerson*, 12 N. H. 62, it is said that where there is a specific agreement, the terms of which contain nothing more, and confer no other rights, and impose no other duties or obligations than the law itself, in the absence of such express agreement, would imply from the transactions of the parties and the circumstances of the case, an action may be maintained upon the implied agreement.   *Gibbs* v. *Bryant*, 1 Pick. 118, is to the same effect. *Paine* v. *Bascomb*, Doug. 628 ; Bull. N. P. 139 ; Esp. N. P. 140 ; *Tuttle* v. *Mergo*, 7 Mass. 132 ; *Keyes* v. *Stone*, 5 Mass. 391 ; *Linningdale* v. *Livingston*, 10 Johns. 36 ; *Baker* v. *Casey*, 19 Pick. 496 ; *Pitkin* v. *Frink*, 8 Met. 16.

It is claimed that on this ground the plaintiff may recover on the common counts, in this suit; but upon the doctrine of *Sanborn* v. *Emerson* it is evident he can not sustain his action.

It is plain that the law would imply no such contract as the one alleged here, from the transactions between these parties, or from the circumstances of the case. The plaintiff was in the possession of the premises under a lease from Hazeltine. The defendant claimed to own these premises, and desired the possession. He could have brought his writ of entry against the plaintiff and tried titles to the place, but he probably, and naturally enough preferred, if he could, to get the possession of the premises, and thus throw the laboring oar upon Hazeltine of commencing the suit. With this view Pomeroy might have requested the plaintiff to leave the premises, and give up the possession to him; and the plaintiff might have done so from a belief that Pomeroy's title was better than Hazeltine's; and in such case the law would raise no promise to pay the plaintiff any thing.

Or suppose the plaintiff, finding that he was likely to get entangled in a lawsuit between these two claimants of the premises, had consented to give up the possession which he held under Hazeltine, if Pomeroy would get Clark or some one else to take a lease of the place under him, he might have supposed that he would thus escape being sued himself, and that if Hazeltine sued any body he would sue Clark, or the person thus taking the lease from Pomeroy, and he would thus be likely to escape costs and trouble. In such case Pomeroy would of course be bound to Clark, or the one to whom he leased the premises, upon the covenants in the lease; but the law would not raise any implied contract, in that case, between Pomeroy and this plaintiff. And there is no light in which the transactions between the parties can be viewed, taking just what was done between them, and leaving out the agreements or contracts upon which it was done, even if the plaintiff did leave the premises at the request of Pomeroy, which would raise any implied promise to indemnify the plaintiff, or pay him any thing; and if Pomeroy was going to hire the plaintiff to give him possession of the premises, in order to give him an advantage, or a supposed advantage over Hazeltine, it might be solely a matter of contract between them. Pomeroy might agree to give him $10, $20, or $50, to yield to him the possession, and the plaintiff would run his own risk; or he might have agreed, as it is alleged he did in this case, to pay all costs and trouble he might be subjected to in consequence of doing it. There would be no promise raised or implied by law, to do one more than the other, or necessarily to do either or any thing.

Neither was there here any rescinding of the contract, so as to enable the plaintiff to recover upon the general counts, on that ground.

This action can not, therefore, be maintained, either upon the special contract or the general counts. It therefore becomes unimportant to consider the other questions raised in the case, as the declaration now stands; but presuming that the declaration may be amended, so as to set forth the special contract in accordance with

the proof, and that these other questions would be likely again to arise, we have here considered them.

It would seem that the set-off is properly described by metes and bounds on three sides; at least no objection is made to the description of the lot on three sides; and on the fourth side it is said to be bounded by "Court Square, or land of William Colburn." It does not distinctly appear whether the two rods of land owned by William Colburn is so included with the county land as to be called in connection with it "Court Square," that term being applied to the land of Colburn as well as the county land, in which case the two terms used in the set-off would be only different appellatives given to the same thing, which might be equally well known by either; or whether it is separated from the county land so as not to be called or known by the name of "Court Square" at all, in which case it would seem that the officer who set off the land was not sure as to its boundary on that side, and intended to bound it either by "Court Square, or land of William Colburn," whichsoever should be found to adjoin it. The testimony of the plaintiff tends to show that the latter is more probably the true construction.

If the former is the true meaning of the expression, there is no doubt about the sufficiency of the description. Our statute requires that the land should be set off "by metes and bounds, or other distinct description." Rev. Stat., ch. 195, sec. 6; Comp. Laws 501. Now what is a sufficient description under this statute? In *Buck* v. *Hardy*, 6 Greenl. 162, in an extent, the premises were described as "the westerly half of the ground floor of the store occupied by E. S., and of the cellar under the same, divided from the residue of said store by a line running from a mark on the north side of said store through the center of the same, southerly, to land of J. N." Here no description of the land upon three sides was given at all, nor was the mark on the north side of the store described at all, except that a line passing from it southerly should go through the center of the store; but the set-off included all the ground floor of the store and the cellar under it, west of a certain line, and it was held a sufficient description "by metes and bounds."

In *Hedge* v. *Drew*, 12 Pick. 141, a set-off was held to contain a sufficient description, by metes and bounds, which was described thus: "The westerly half of a certain dwelling-house (describing it), with the land the westerly half of said house stands on, and the part of the garden back of the said house the width of the house," to a bound specified. In these cases it was held that the description was sufficient, because it was evident that there was no difficulty in ascertaining the location of the land; that enough was given to identify it, and that this was sufficiently certain for every useful purpose. These cases are cited, and the doctrine established by them is approved in *McConihe* v. *Sawyer*, 42 N. H. 396. In the case before us there is no intimation that there is any difficulty in ascertaining the land set off, its location and boundaries. If the terms used in the description were intended to refer to two different closes, in the alternative, the land set off to be bounded by the close which should be found to adjoin it, of the two described, then

it might be easily ascertained from the records which of the two were the true boundary. And in this case, that may perhaps be considered as certain which can be made certain; as in case of an extent, where the only description is by reference to deeds which are recorded, where the land is particularly described, which is held to be sufficient. *Boylston* v. *Carbee*, 10 Mass. 515; *McConihe* v. *Sawyer*, before cited. We therefore hold that the description in the set-off is sufficient.

Was the plaintiff damnified by the levy before suit brought? or, in other words, was the levy made and the plaintiff's property taken before he commenced his suit? It appears that the officer commenced his levy by swearing an appraiser on the same day the plaintiff's writ was made, and no suggestion is made that it was not in fact before the commencement of this suit. And we think that this must be considered as a taking in law, of the plaintiff's property, by the sheriff, and that although the creditor's title is not completed until the completion of the extent, yet that, as regards the debtor, the property must be regarded in law as seized by the officer when he commences his levy; just as it would be in case of personal property taken by him on execution and held in his hands till it could be legally sold. It is to all intents and purposes taken from the debtor when the sheriff levies upon it, and in the eye of the law takes it into his possession. And the debtor may bring his action for a wrongful taking, as well before the sale upon the execution as after. And if a person were liable even to indemnify the debtor against the claim on which the execution was founded, the debtor's action for indemnity might be brought as soon as his property was seized and taken by the sheriff, to hold to satisfy the execution, as well as after the sale or set-off was completed.

In Massachusetts it has been held that in a levy of an execution upon land, the levy shall be considered as taking effect, by relation, from the time when the legal proceedings for making the levy commenced, if followed up seasonably by a compliance with the requisites of the law. *Hall* v. *Crocker*, 3 Met. 245, and Mass. cases there cited. And the same principle has been held to apply in this State, though the wording of our statute differs slightly from that of the statute in Massachusetts. *Howard* v. *Daniels*, 2 N. H. 137, is a case in point, where it is held that if the levy is commenced within the thirty days during which the land is held by the attachment, all the subsequent proceedings operate back to the time when the levy is thus commenced. Our statute makes the swearing of an appraiser on the execution the commencement of a levy. Rev. Stat., ch. 195, sec. 5; Comp. Laws 501.

It is also claimed by the defendant that he is not liable for the amount of the judgment on which the plaintiff's land was set off, upon the ground that the plaintiff did not follow Mr. Felton's directions in the suit. But we think that position can not be maintained. If the contract in the case had been such as set forth in the plaintiff's declaration, the defendant's views might seem more reasonable, though then, upon the evidence, there might be

doubt. But if the declaration is amended so as to set forth the consideration of the defendant's promises according to the proof in the case, then there was no obligation on the part of the plaintiff to follow Felton's directions in the original contract; and the defendant having promised to indemnify the plaintiff, as the evidence shows, without any reference to Mr. Felton, or his advice, but these directions having been given at a subsequent time, the plaintiff was only bound to follow these directions with reasonable certainty, and to a reasonable extent. Now this being a verdict by consent, every fact tending to sustain it, which there was any evidence competent to prove, is to be assumed as found by the jury. It is therefore to be assumed that the jury found that after the suit against the plaintiff had been in court for a time, and not knowing what to do, the plaintiff went to Felton for instructions, who wrote the defendant upon the subject, but got no directions, and he was then told by Felton that he guessed he (plaintiff) would have to pay the costs; whereupon he thought best to take care of himself; and we think that was a reasonable view to take of it. He had followed directions as long as he was able to obtain any; and then he was left to adopt the course that discretion might point out to him.

Nor could Pomeroy, under these circumstances, find fault that the plaintiff asked him, in advance, to give him the indemnity which he had guaranteed to him. The plaintiff was only asking what any nominal party is always entitled to by law; that is, security for costs from the party in interest. And though Pomeroy had agreed to pay all costs and damages which the plaintiff might be subjected to, the plaintiff had never agreed to waive any legal right he might have in any suit that might be brought against him in consequence of his contract with Pomeroy.

But it is said that this plaintiff, in order to hold the defendant liable to pay the judgment in such case, must have allowed him to make his defense in his own way and in his own time, and that the plaintiff must not interpose any obstructions or conditions. No doubt that when one is sued, where another is liable over as warrantor, or guarantor, the defendant must not accompany his notice to the warrantor with any unreasonable conditions; nor, after such third person had appeared and defended for a time, would the defendant be justified in imposing any such conditions as the terms upon which he might continue to make such defense.

But we think that every third person who thus comes into a defense on notice, or voluntarily, as in this case, comes in subject to all such reasonable rules and orders as the court may see fit to make in the case. Suppose that, in this case, after Pomeroy had been allowed to defend, in his own way, several terms, and then the cause had come on for trial, and the defendant had been taken by surprise by some piece of evidence offered by the plaintiff, and was obliged to ask for a continuance, and terms had been proposed, and the question should arise as to who should pay these terms, neither party might perhaps have a right to decide that question upon his own responsibility, but if the matter were referred to the court, and the court, in view of all the circumstances, had ordered

that Pomeroy should pay them, in the first instance, instead of the defendant of record, and thereupon Pomeroy should abandon his defense and judgment be rendered for the plaintiff; there can be no doubt but Pomeroy would be bound by that judgment as much as though he had made full defense. So in this case, this plaintiff, who was the defendant of record in the former suit, had allowed Pomeroy to defend the case in his own way, until it would seem he became somewhat impatient at the delay; but instead of imposing any conditions himself, or assuming to do so, upon which Pomeroy should be allowed to defend farther, the question is raised and submitted to the court, and the court, in view of all the circumstances, order Pomeroy to furnish security for costs, who thereupon refuses to obey this order of court and abandons his defense.

We can not hold that such common and reasonable orders, being made by the court, though upon motion of the defendant in that case, can avail as an excuse to the defendant, Pomeroy, for thus abandoning the defense he had undertaken; but we think he must be held to be concluded by the judgment in that case, the same as though he had made full defense; and that makes it immaterial what the plaintiff's cause of action was in that case, or whether it were properly stated. Pomeroy is concluded by the judgment.

We think the defendant in this case would be liable, with a proper declaration, for the whole amount of this judgment, with costs of set-off, interest, &c., in addition to such other sum as should be paid for trouble, services and expenses in the matter.

According to the agreement in the case, the verdict must be set aside and judgment rendered for the defendant, unless the plaintiff obtain leave to amend his writ, in which case a new trial will be granted.